# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ADA REAL ESTATE JOINT VENTURE, LTD., an Ohio limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>STAPLES THE OFFICE SUPERSTORE EAST, INC., a Delaware corporation; and STAPLES INC., a Delaware corporation,<br><br>Defendants. | Case No. 6:24-cv-437-JAR |

## ORDER AND OPINION

Before the Court is the motion to reconsider [Doc. 62] filed on behalf of plaintiff Ada Real Estate Joint Venture, Ltd., pursuant to Fed. R. Civ. P. 60(b). Plaintiff seeks reconsideration of this Court's Opinion and Order of July 8, 2025 ("Order") [Doc. 52] granting defendants' motion for partial summary judgment [Doc. 36] and denying plaintiff's motion for partial summary judgment [Doc. 35].[1] According to plaintiff, the Order renders certain portions of the parties' lease agreement ("Lease") an absurdity and "contains impermissible mistakes of law and fact." [Doc. 62 at 1].

### I.   STANDARD OF REVIEW

Though the Federal Rules of Civil Procedure do not recognize a "motion to reconsider," the rules do "allow a litigant subject to an adverse judgment to file either a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e), or a motion seeking relief from the judgment pursuant to Fed. R. Civ. P. 60(b)." Van Skiver v.

---

[1] Plaintiff does not ask the Court to reconsider its finding that defendant Staples, Inc. should be dismissed from this action. [Doc. 62 at 1 n.2].

1

United States, 952 F.2d 1241, 1242 (10th Cir. 1991). The Tenth Circuit has stated that "[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." Id. Thus, "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." Id.; *see also* Brumark Corp. v. Samson Res. Corp., 57 F.3d 941, 944 (10th Cir. 1995) ("[A] motion for reconsideration is an extreme remedy to be granted in rare circumstances.").

## II.  DISCUSSION

Plaintiff sets forth two propositions in support of its motion to reconsider: (1) the Court mistakenly ignored the intent of the parties; and (2) the Order relies on mistakes of fact when reaching its conclusion.

### A.  PROPOSITION I

> In finding that [defendant] was required to maintain an insurance policy but not required to file a claim, the Court mistakenly overlooked the intent of the [Lease] thereby making certain provisions of the [Lease] immaterial, and rendering portions of the [Lease] irrelevant and absurd.

[Doc. 62 at 6]. Plaintiff proffers three arguments under its initial proposition: the Court's finding that defendant must maintain a policy and pay insurance proceeds, without ever being obligated to file a claim, is a mistake of fact and law [*Id*. at 7-9]; the Court impermissibly interchanged the phrases "damage to property" and

"casualty event" [*Id.* at 9-10]; and the Order impermissibly reads the contract in favor of defendant as the drafter [*Id.* at 10-11].

### 1. Plaintiff's First Contention

According to plaintiff, the Court erred by concluding that defendant "was not required to file a claim under its casualty insurance because there was not an explicit provision in the [Lease] requiring it to do so." [*Id.* at 7]. This argument mischaracterizes the Court's legal analysis. At summary judgment, the following material facts were not in dispute: defendant properly maintained a policy of all-risk property insurance with a $250,000 per- casualty deductible ("Policy"); the Lease imposed no limit on the deductible amount; a hailstorm caused $116,250 in roof damage, qualifying as a casualty event under the Lease; and defendant did not file a claim for insurance proceeds. Plaintiff contended that defendant was contractually obligated to submit such a claim and, had it done so, defendant could have avoided liability for the roof replacement cost by invoking Section 7.3.2 of the Lease.

The Court first considered whether the Lease imposed a mandatory obligation on defendant to submit a claim under its Policy regardless of the deductible. The relevant provisions contained no such directive, and Oklahoma law prohibits courts from reading additional duties into a contract. [Doc. 52 at 13 (*citing* Krug v. Helmerich & Payne, Inc., 2013 OK 104, ¶ 35, 320 P.3d 1012, 1022; Mercury Inv. Co. v. F.W. Woolworth Co., 1985 OK 38, ¶ 12, 706 P.2d 523, 530)]. The Court further noted that Section 10.1 of the Lease assigns the duty to restore the premises to plaintiff "at its expense," while referencing insurance proceeds only for purposes of

establishing restoration deadlines, not as a condition to plaintiff's financial obligation. [*Id*. at 13-14]. The Court then turned to damages. Section 10.1 provides consequences where defendant fails to remit insurance proceeds "solely due to [its] bad faith in obtaining the same." [*Id*. at 14-15]. Even assuming *arguendo* that plaintiff had properly alleged bad faith, the undisputed record demonstrated that the deductible far exceeded the cost of replacing the roof. Accordingly, no proceeds would have been available even if defendant had submitted a claim. [*Id*. at 15-16 (*citing* Newman v. Roach, 1925 OK 714, ¶ 19, 239 P. 640, 643) ("It is a general rule that, where it is manifest that a demand [for performance] would have been wholly futile if made, it is unnecessary to go through the formality of making it.")]. Without damages proximately caused by the alleged breach, plaintiff's claim cannot succeed as a matter of law. [*Id*. at 16 (*citing* Digital Design Grp., Inc. v. Info. Builders, Inc., 2001 OK 21, ¶ 33, 24 P.3d 834, 843].

In sum, the Court did not conclude that defendant avoided liability merely because the Lease lacked an explicit "file a claim" clause. Rather, the Court held that the Lease imposed no such obligation on defendant under the circumstances presented, where the restoration costs fell well below the Policy's deductible and no insurance proceeds would have been available. Because the Lease placed the restoration obligation squarely on plaintiff "at its expense" and plaintiff failed to establish damages proximately caused by defendant's challenged omission, its breach of contract claim necessarily failed.

4

### 2. Plaintiff's Second Contention

Plaintiff next argues that the Court erred in its interpretation of Section 7.3.2 of the Lease. According to plaintiff, the Court improperly equated the phrase "damage to property" in Section 7.3.2 with the term "casualty event," thereby extending the waiver of liability in that provision to the hailstorm loss at issue. Plaintiff emphasizes that the Lease references "casualty" or "casualty event" in multiple provisions, whereas the phrase "damage to property" appears only once in Section 7.3.2, and contends that the parties' use of different terms must reflect different intended meanings. Plaintiff therefore asserts that Section 7.3.2 applies solely to ordinary property damage and not to casualty losses. [Doc. 62 at 9-10].

The Court does not agree. The Order did not reduce its analysis to a definitional substitution of "damage to property" for "casualty event." Rather, the Court construed Section 7.3.2 in the broader context of the Lease and the insurance obligations it imposes. As the Order explained, Section 7.3.2 "establishes a mutual waiver for property damage covered (or required to be covered) by insurance." [Doc. 52 at 12]. By its terms, the provision operates as a release of liability for insured losses (including those subject to "any deductible" or "self-insured portions") and "prevents either party from seeking reimbursement from the other where the loss is insurable under the Lease, even if no insurance payment is actually made." [*Id.*]. The hailstorm damage to the leased roof plainly qualifies as a loss covered, or required to be covered, by insurance under the Lease. Plaintiff's reading—that "damage to property" must exclude casualty-driven losses—would artificially narrow the scope of

Section 7.3.2 and deprive the waiver of practical effect, a result Oklahoma law does not permit. *See* Krug, ¶ 35, 320 P.3d at 1022 (courts must interpret contracts to give reasonable meaning to all provisions).

Moreover, plaintiff's second argument is not dispositive. Even assuming *arguendo* that Section 7.3.2 does not apply to the hail loss, plaintiff's claim still fails for the reasons already stated. Those findings independently bar its breach of contract claim, and plaintiff's narrow textual parsing of Section 7.3.2 does not alter the outcome.

### 3.     Plaintiff's Third Contention

Plaintiff further asserts that because the Lease was presented by defendant as a standard form agreement with no opportunity for negotiation, any uncertainty in its provisions must be construed against defendant as drafter under Oklahoma law. [Doc. 62 at 11 (*citing* 15 O.S. § 170)]. Plaintiff relies on deposition testimony of its manager, Brian Ross, to support this contention. [*Id.* at 10].

The Court finds this argument unpersuasive. First, the record reflects a disputed issue of fact regarding whether defendant unilaterally drafted the Lease or whether plaintiff participated in its negotiation. Defendant correctly noted Mr. Ross did not testify that the Lease was a "standard form generated by Staples," but only that it was a "standard lease" used in multiple transactions between the parties. [Doc. 38 at 2, ¶ 2 (*citing* Doc. 35-2 at 1 (15:21-16:3)]. Mr. Ross further acknowledged that plaintiff was represented by both himself and counsel in negotiating the Lease and similar agreements with defendant. [*Id.* (*citing* Doc. 36-2 at 18-19 (18:20-19:1)].

6

Because this factual dispute was material, the Court could not resolve it at the summary judgment stage in plaintiff's favor.

Moreover, even if plaintiff had established that defendant was the sole drafter of the Lease, Oklahoma law requires construing contractual language against the drafter only where an ambiguity exists. *See* 15 O.S. § 170. The Court found no such ambiguity in the provisions at issue. While the parties' disagreement over whether the Lease was a standard form presented by defendant or the product of negotiation created a material factual dispute, that dispute was not dispositive to the Court's holding. Absent ambiguity, there is no basis to construe the Lease against defendant, and plaintiff's reliance on § 170 does not demonstrate manifest error warranting reconsideration.

### B. PROPOSITION II

> In addition to the mistakes of law, … the Order also made certain mistakes of fact when reaching its conclusion. While one of these mistakes when standing alone may not rise to the level necessitating reconsideration, taken as a whole, these mistakes of fact significantly and substantively alter the outcome of this case.

[Doc. 62 at 11].

Plaintiff contends the Court erred in stating that it had "a number of other leases" with defendant. According to plaintiff, the record shows that it had no other lease agreement with defendant, though its parent company had entered into several such agreements over a 20-year period, and at the time of the events at issue, only one such lease remained. [*Id.*]. While the Court's reference to "other leases" may not have precisely distinguished between plaintiff and its parent entity, that factual nuance was not material to the Court's holding. The Court's decision did not turn on

the precise number of leases in existence, but on the Lease provisions and the absence of damages flowing from defendant's alleged breach.

Plaintiff also asserts the Court erred in characterizing the Lease as the product of negotiation. It maintains the Lease was a standardized form presented by defendant, not subject to genuine bargaining, and points to deposition testimony indicating that discussions regarding the insurance provisions amounted only to questions and reassurances. [*Id.* at 12 (*citing* Doc. 36-2 at 20-21 (20:24-21:5)]. Defendant, by contrast, cited testimony that plaintiff was represented by both its manager and legal counsel in connection with the Lease, as well as evidence of plaintiff's prior leasing experience with defendant, suggesting some measure of negotiation. [Doc. 38 at 2, ¶ 2 (*citing* Doc. 36-2 at 18-19 (18:20-19:1)]. In any event, whether the Lease was heavily negotiated or largely presented as a standard form was not dispositive to the Court's analysis. The Court's ruling turned on established principles of contract law: that the Lease, by its terms, imposed no obligation on defendant to file an insurance claim where the deductible exceeded the restoration cost, and that plaintiff failed to demonstrate damages proximately caused by the alleged breach.

Accordingly, even if minor corrections to the factual record were appropriate, they would not alter the outcome. The alleged factual inaccuracies identified by plaintiff are not material to the Court's holding and do not establish a basis for reconsideration.

## III.  CONCLUSION

IT IS THEREFORE ORDERED that plaintiff's motion to reconsider [Doc. 62] is hereby **DENIED**.

IT IS SO ORDERED this 20th day of August, 2025.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE